**Dorothy A. HAMM**

v.

**UNIVERSITY OF MAINE.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1980.

Decided Dec. 23, 1980.

---

result of an earlier non–work–related injury, was made greater by her employment. We agree and accordingly reverse the judgment.

In November of 1971, Mrs. Hamm sustained an injury to her right side as a result of a fall on Hammond Street in Bangor. The injury did not arise in the course of her employment. After her fall Mrs. Hamm frequently experienced pain in her right shoulder, and in April of 1973 she underwent surgery for the purpose of removing the distal clavicle. The surgery resulted in permanent impairment to the right shoulder, and Mrs. Hamm's condition was diagnosed as acromioclavicular arthritis on the right side with some cystic degeneration.

The surgery did not alleviate the pain in Mrs. Hamm's shoulder, and on September 12, 1973, she saw Dr. James R. Curtis of Bangor. Dr. Curtis treated Mrs. Hamm with an injection of local anesthesia as well as steroid injections and obtained good results. Dr. Curtis last saw Mrs. Hamm on March 1, 1974, at which time he referred her back to Dr. Kimball for further treatment and evaluation since she reported that Dr. Curtis's treatment was not helping her.

Mrs. Hamm next saw a third physician, Dr. Albert J. Pepe of Waterville, again complaining of pain in her right shoulder. On June 26, 1974, Dr. Pepe performed an arthrogram on Mrs. Hamm's right shoulder, but this did not reveal a tear in the capsule. There were, however, some changes in the bicipital groove of the shoulder. Mrs. Hamm was again seen by Dr. Pepe on November 21, 1974, as she continued to complain of shoulder pain. Dr. Pepe performed an acromioplasty and a transfer of the long head of the bicep tendon to the humerus on December 4, 1974, and last saw her on November 18, 1975.

The last physician who saw Mrs. Hamm was Dr. Rowland Pritchard, an orthopedic surgeon. Dr. Pritchard initially examined Mrs. Hamm in October of 1977 and again in November. On the basis of his examination and a review of x–rays of the shoulder area, Dr. Pritchard concluded that the cause of

Twitchell, Gray, Linscott & Badger by Richard M. Maraghy (orally), Steven G. Shadallah, Frederick Badger, Jr., Bangor, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Brenda T. Piampiano (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

In this workers' compensation case the employer, University of Maine, appeals from the *pro forma* decree of the Superior Court (Penobscot County) entered on a decision of the Workers' Compensation Commission dated April 14, 1980. That decision awarded the employee, Dorothy Hamm, compensation commencing November 5, 1977, for a disability caused by an injury sustained during the course of her employment as a salad preparer in the University's kitchen. The employer argues that the commissioner erred in awarding benefits because the record contains no evidence to support a finding that the employee's underlying physical disability, which was the

Mrs. Hamm's condition was "soft tissue scarring secondary to a number of surgical procedures, as well as weakness of the shoulder girdle relating to over–zealous excision of the lateral portion of the right clavicle." When asked whether Mrs. Hamm's preexisting condition was aggravated by her work for the University, Dr. Pritchard responded:

> I do think that this type of work tended to stir up or aggravate the—her shoulder complaints.... She even complained bitterly about carrying out certain types of simple types of housework at home because of pain.

After her second operation in December of 1974, Mrs. Hamm, who had worked as a salad preparer at the University of Maine since August, 1971, remained out of work until approximately the second week of July, 1975. In August of 1975 she began working on a full–time basis, again as a salad preparer. From November, 1975, through November, 1977, she continued to experience pain in her right shoulder from the chopping action involved in the performance of her duties. In June of 1977 Mrs. Hamm was transferred to the Orono campus of the University. There she worked in the dishroom, a job requiring her to lift heavy dishes, trays, and glasses, and to move them from place to place. These activities, in which she used her arms and shoulders even more, aggravated her condition. On about July 1, 1977, Mrs. Hamm stopped working because of the painful condition of her right shoulder.

The employee returned to work as a salad preparer at the Bangor campus of the University just after Labor Day in September, 1977. When the pain in her shoulder increased once again, she asked her supervisor, Donald Murphy, if there was some other type of work she could perform that would put less strain on her arm and shoulder. He told her there was no less stressful ── ── ── ble. Mrs. Hamm again stopped vember 4, 1977.

⁄o years later, on November 1, ᵉgan working as a telephone the Maine Air National Guard,

where she had been placed through the CETA program. Again, Mrs. Hamm experienced pain in her right shoulder that was of the same nature and degree as in prior instances, and after less than two months she was again forced to stop work. She testified that other tasks, such as driving and performing household chores, caused her much the same pain.

On May 4, 1979, Mrs. Hamm filed the petition for award of compensation that ultimately resulted in the present appeal. By decision dated April 14, 1980, the commissioner found that she had sustained a compensable injury during the summer of 1977 by which she had been totally disabled from November 5, 1977, to May 1, 1978, and that she had been 50% disabled from May 2, 1978, until the date of the decree. Commensurate compensation was ordered to be paid, except for the period from November 1, 1979, to December 27, 1979, when she worked for the Maine Air National Guard.

It is basic to workers' compensation law that an award of compensation can only be made for disabilities which "arise out of" and are sustained "in the course" of employment. 39 M.R.S.A. § 51 (1978); *Wing v. Cornwall Industries*, Me., 418 A.2d 177, 178–79 (1980); 1 Larson, *The Law of Workmen's Compensation* § 6.10. To justify an award of compensation here it is not enough that Mrs. Hamm could no longer perform her job because of a disabling condition. The physical condition that impairs her earning capacity must have been caused or at least made worse by the performance of her job at the University.

Mrs. Hamm's underlying physical condition is directly traceable to the injuries she sustained as a result of her fall in 1971. In addition, the medical testimony of Dr. Pritchard establishes that the employee's permanent disability is due, at least in part, to the performance of surgical procedures that were intended to alleviate the pain in her shoulder. The commissioner had no competent evidence before him to support a finding that Mrs. Hamm's underlying physical disability of acromioclavicular arthritis had been caused, or made greater, by her

employment at the University. Although her University job was the occasion for her suffering more symptoms, namely, pain and swelling, the evidence does not support a conclusion that the basic condition of her shoulder was any different after November 4, 1977, when she stopped work for the University, than it had been when she started work earlier in the year. The employee has failed to sustain her burden of proving her entitlement to an award of compensation. *See Axelsen v. S. D. Warren Division*, Me., 423 A.2d 546 (1980); *MacLeod v. Great Northern Paper Co.*, Me., 268 A.2d 488, 489 (1970). *Cf. Soucy v. Fraser Paper, Ltd.*, Me., 267 A.2d 919 (1970).

The entry is:

Appeal sustained.

*Pro forma* decree of the Superior Court reversed; judgment for defendant.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550 together with her reasonable out–of–pocket expenses for this appeal.

All concurring.